## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LASHAWN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-CV-6779 |
| v. | ) | |
| | ) | |
| FORSTER & GARBUS LLP, and | ) | JURY DEMANDED |
| ASSET ACCEPTANCE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

### Introduction

1.       Approximately 15 years ago the Plaintiff, Lashawn Brown, was a victim of identity theft believed to have been committed by an ex-boyfriend.

2.       After their break up, Ms. Brown's ex moved to California, where he used her identity to obtain numerous credit cards and open other accounts in her name.  Ms. Brown believes that one of these accounts was for a cell phone with Pacific Bell.  Ms. Brown has never had any relationship with Pacific Bell, lived in California, or even visited California.

3.       Ms. Brown discovered the identity theft in 2001, approximately 14 years ago, and quickly filed a police report.  Ms. Brown then engaged in a long battle to clear her credit.  Ms. Brown put a fraud alert on her credit report and sent letters to the credit reporting agencies to have the information removed.  Ms. Brown was successful with this and thought that this episode was behind her.

4.       In 2007, Ms. Brown was sued by Asset Acceptance who sought to

1

collect the money owed on the Pacific Bell account.  Ms. Brown did not receive service of the summons and complaint and did not appear in court resulting in a default judgment.  Based on this judgment, Asset Acceptance attempted to garnish Ms. Brown's wages in late 2011.  Ms. Brown quickly filed an order to show cause in Bronx Civil Court to have the default judgment vacated.

5.     Ms. Brown's order to show cause was granted on January 9, 2012 and a trial date was scheduled for May 9, 2012.  On the trial date, the case was dismissed and Ms. Brown believed the case was finally over.

6.     At some point after the dismissal of the lawsuit, Asset Acceptance changed lawyers to Forster & Garbus LLP.  In spite of not having a judgment or an active case, Asset Acceptance and Forster & Garbus began to demand that Ms. Brown pay the judgment.  This began in late August 2014 with a letter asking Ms. Brown contact Forster & Garbus to pay the judgment.  When this was ignored Forster & Garbus simply enforced the non-existent judgment by freezing Ms. Brown Bank of America safe deposit box.  When Ms. Brown contacted Forster & Garbus, they instructed her to fill out an identity theft report.  At her wits end, Ms. Brown sent Forster & Garbus a letter on March 2, 2015 detailing that the case had been dismissed and judgment vacated.  This letter was sent return receipt requested and included the order vacating the judgment, the order dismissing the case, and the restraining notice.  Even after receiving these documents Forster & Garbus has not release Ms. Brown's safe deposit box which remains frozen as of the date of this complaint.

## Jurisdiction and Venue

7.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

8.    This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

9.    Declaratory relief is available under 28 U.S.C. §§ 2201 and 2202.

10.    Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of New York at the time this action is commenced.

## Parties

11.    Plaintiff Lashawn Brown resides in this district.

12.    Ms. Brown is a "consumer," as that term is defined by § 1692a(3) of the FDCPA.

13.    Defendant Forster & Garbus LLP ("F&G") is a debt-collection law regularly engaged in the business of collecting debts in New York State.

14.    F&G's principal place of business is located at 60 Motor Parkway, Commack, NY 11725.

15.    F&G's principal purpose is the collection of debts using the mails and telephone.

3

16.     F&G regularly attempts to collect debts alleged to be due another.

17.     F&G is a "debt collector," as that term is defined by § 1692a(6) of the FDCPA.

18.     Defendant ASSET ACCEPTANCE, LLC is a business engaged in collecting debts in this New York State, with its principal place of business located in Warren, Michigan.

19.     ASSET ACCEPTANCE, LLC is a foreign limited liability company licensed to do business in New York.

20.     The principal purpose of ASSET ACCEPTANCE, LLC is the collection of debts.

21.     ASSET ACCEPTANCE, LLC regularly attempts to collect debts alleged to be due another.

22.     ASSET ACCEPTANCE, LLC is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

23.     ASSET ACCEPTANCE, LLC purchases the right to collect debts that are already in default, and then attempts to collect those debts.

24.     Here, ASSET ACCEPTANCE, LLC purports to have purchased the right to collect a debt from Brown, after that alleged debt had already gone into default.

25.     Defendants are regularly engaged in the business of collecting debts allegedly owed by consumers through collection letters and other correspondence, through filing lawsuits, and through using various post-collection remedies like

4

income executions, and freezing bank accounts and safe deposit boxes.

26.     The acts and omissions of the Defendants alleged herein were conducted by its employees acting within the scope of their actual or apparent authority.

27.     The Plaintiff alleges that at all times herein mentioned, each of the Defendants were, and is now, the agent, servant, employee and/or other representative of the other Defendants, and in doing the things herein alleged, was acting in the scope, purpose and authority of such agency, service employment, and/or other representative capacity with the permission, knowledge consent and/or ratification of the other Defendants. Any reference to "Defendant," or "Defendants," or "Debt collector," without further qualification is meant to refer to each and all defendants herein jointly and severally.

## Facts

28.     F&G and ASSET ACCEPTANCE, LLC sought to collect a debt from Brown that was allegedly owed to "ASSET ACCEPTANCE, LLC AAO PACIFIC BELL, TELE/SCA-LLA".

29.     The alleged debt that F&G and ASSET ACCEPTANCE, LLC sought to collect from Brown arose out of transactions that were incurred primarily for personal, family or household purposes.

30.     The alleged debt that F&G and Asset Acceptance, LLC sought to collect from Brown is a "debt," as that term is defined by § 1692a(5) of the FDCPA.

31.     In or about 2001, Ms. Brown had her identity stolen.

5

32.     Ms. Brown believes that her identity was stolen by an ex-boyfriend.

33.     Among other things, Ms. Brown believes that her ex-boyfriend may have opened a telephone account in her name with Pacific Bell in California.

34.     Ms. Brown has never lived in California, visited California, or had an account with Pacific Bell.

35.     At the time, Ms. Brown was living in South Carolina.

36.     In March 2001, Ms. Brown filed a police report with the authorities in South Carolina.

37.     A copy of the police report, with personal information that could be used for identity theft redacted, is attached as <u>Exhibit A</u>.

38.     Sometime thereafter, Ms. Brown moved to The Bronx.

39.     Sometime between 2001 and 2005, Asset Acceptance, LLC claims to have purchased the account that was the result of identity theft from Pacific Bell.

40.     Asset Acceptance began pursuing Ms. Brown for the debt that she didn't owe.

41.     When Ms. Brown disputed the debt with Asset Acceptance, explaining that it resulted from identity theft, instead of ceasing collection, Asset Acceptance sent a letter demanding proof that Brown didn't owe the debt.

42.     One such letter, dated January 4, 2006, is attached as <u>Exhibit B</u>.

43.     Despite knowing that Brown was alleging identity theft, Asset Acceptance hired a debt collection attorney in Syracuse, New York, by the name of Joel Melnicoff, Esq., to sue her.

6

44.    Defendants filed suit against Ms. Brown in the Civil Court of the City of New York, Count of The Bronx.

45.    Ms. Brown was never served with a copy of a summons and complaint.

46.    Instead a default judgment was entered against her on January 1, 2008. *See* Exhibit C, attached hereto.

47.    Ms. Brown first learned that a default judgment had been entered against her when Melnicoff, acting on behalf of Asset Acceptance, served an income execution, followed by a Marshall's Levy, on Ms. Brown's employer in November 2011. *See* Exhibits D and E, respectively.

48.    In December 2011 Ms. Brown moved by order to show cause to vacate the default judgment.

49.    In her affidavit in support of the order to show cause, dated December 27, 2011, Ms. Brown stated under oath that "I allege that I have a good defense because I have been a victim of identity theft multiple times at this location and South Carolina." *See* Exhibit F.

50.    The court granted the order to show cause, vacated the default judgment, ordered the return of all funds to Ms. Brown, and scheduled the action for trial. *See* Decision and Order attached as Exhibit G.

51.    The court also accepted Ms. Brown's verified answer, dated December 27, 2011, a copy of which is attached as Exhibit H, in which she denied the allegations of the complaint, denied having received the summons and complaint, and explained that she did not owe the debt because she was a victim of identity

7

theft.

52.     In addition, Ms. Brown handwrote as a defense in her verified answer that "My identity was stolen and I have multiple fraud alerts on my credit report." *Id.*

53.     Finally, in August 2012, Ms. Brown believed that the nightmare with Asset Acceptance had ended when the Honorable Ruben Franco, Bronx Civil Court Judge, signed an order dismissing the matter with prejudice. *See* <u>Exhibit I</u>.

54.     And this should have been the end of the nightmare because the Bronx Civil Court's own computers, which can be accessed by the public through the NYS Unified Court System website, shows that Ms. Brown's order to show cause to vacate the judgment was granted on default on December 27, 2011, *see* <u>Exhibit J</u>, and more importantly, reflects that by order dated August 10, 2012, the matter was dismissed after a bench trial, *see* <u>Exhibit K</u>.

55.     In other words, anyone with even the slightest knowledge of the court's publicly available computer records would have known (a) that as of December 27, 2011, there was no judgment in favor of Asset Acceptance and against Ms. Brown, and (b) that as of August 10, 2012, the Asset Acceptance case against Ms. Brown was no more, having been dismissed after a bench trial.

56.     But Asset Acceptance was only just getting started.

57.     In or about August 2014, Asset Acceptance retained F&G to collect on the default judgment that had been vacated and was based on an underlying case that had been dismissed with prejudice.

8

58.     On or about August 27, 2014, F&G sent a debt-collection letter demanding $6,621.50 on behalf of "Re: ASSET ACCEPTANCE LLC AAO PACIFIC BELL, TELE/SCA-LOA." *See* Exhibit L.

59.     Upon information and belief, F&G did not file or send Ms. Brown a substitution of counsel.

60.     Upon information and belief, this was the initial communication that Ms. Brown received from Asset Acceptance's new debt collector, F&G.

61.     Upon information and belief, this was the first written communication that F&G sent to Ms. Brown.

62.     Even though this was the initial communication, F&G identified the creditor using the name of an entity that does not exist: "Re: ASSET ACCEPTANCE LLC AAO PACIFIC BELL, TELE/SCA-LOA" and without any indication that the "Re" field contains the name of the alleged creditor.

63.     This is not the first time that F&G has used the names of similar non-existent entities. *See Lee v. Forster & Garbus LLP*, 926 F.Supp.2d 482 (E.D.N.Y. 2013).

64.     In addition, F&G omitted all of the warnings and notices required under the FDCPA to be included in the initial written communication.

65.     Moreover, as explained above, not only had the judgment upon which Defendants were trying to collect been vacated, but the debt itself had been extinguished by the dismissal with prejudice in the Bronx Civil Court.

66.     On or about October 20, 2014, Defendants upped the ante when F&G

9

sent a restraining notice to Bank of America to freeze Ms. Brown's assets.

67.     In doing so, Defendants were relying on a non-existent judgment based on an extinguished debt.

68.     And the fact that the judgment had been vacated and the case dismissed was information available to anyone who knows how to look up a case docket on the publicly available court system for the New York City Civil Court.

69.     Upon receipt of the restraining notice, Bank of America froze Ms. Brown's access to her safe deposit box, located in South Carolina.

70.     In November 2014, Ms. Brown received notice from Bank of America that her safe deposit box had been frozen. *See* Exhibit M.

71.     To date, Defendants have not lifted the restraint on Ms. Brown's safe deposit box.

72.     Ms. Brown contacted F&G to find out what possible basis F&G had to freeze her bank account.

73.     When she advised F&G that the account was the result of identity theft and that the state-court action had been dismissed, F&G responded by sending a letter, dated November 10, 2014, signed by a non-attorney "Compliance Clerk," enclosing a copy of the 2008 judgment, which had been vacated years earlier, and demanding that Ms. Brown prove that she didn't owe the debt. *See* Exhibit N.

74.     Ms. Brown also travelled to South Carolina to try to address the problem in person with the Bank of America branch manager, but was advised that

10

there was nothing the bank could do without notice from Defendants that they were

releasing the freeze.

75.     At her wit's end, on March 2, 2015, Ms. Brown a letter to F&G by

certified mail, return receipt request, <u>Exhibit O</u>, advising that

> The case with index number 33399-07 is dismissed
> by ordered of the Civil Court of the City of New York,
> Bronx County on 8-10-12.
>
> Therefore please stop restraining my safe deposit
> box with Bank of America in South Carolina.
>
> In conclusion, the following documents are attach
> to this certified letter:
>
> ■ Decision and Order
> ■ Order of Disposition
> ■ Restraining Notice with Subpena: E8121553
>
> Thank you,
>
> /s/ Lashawn Brown

76.     Although F&G received the letter on March 4, 2015, *see* <u>Exhibit O</u>, Ms.

Brown's safe deposit box remains frozen to this day.

77.     Upon information and belief, Asset Acceptance has been assigning

thousands of judgments for post-judgment collection by law firms in New York

State like F&G.

78.     Upon information and belief, Asset Acceptance's records show that

these judgments remain in force and uncollected.

79.     But upon information and belief, an unknown number of these

judgments are the result of sewer service or, like the judgment against Ms. Brown,

11

have been vacated and dismissed with prejudice.

80.     Upon information and belief, no attorney conducted a meaningful attorney review before Defendants, through F&G, attempted to collect on the vacated judgment and dismissed complaint.

81.     For proof, one need look no further than F&G's failure to even check the online court docket to see whether Ms. Brown still had a judgment – or even a case – pending against her.

82.     On information and belief, Defendants use a mechanized computer-driven process to send these letters and pursue post-judgment remedies, and most variable information (such as the name of the creditor, the alleged amount due, and the name of the consumer) is inserted into pre-defined "fields" by a word-processor or other computer-driven document assembly software.

83.     Further, upon information and belief, Plaintiff alleges that the information to be inserted in these fields, to generate these letters and post-judgment remedy documents, are prepared *en masse*, as electronically-stored information, *via* modem or other computer-readable format, and sent from Asset Acceptance to firms like F&G for attorney-free transmission to consumers and banks.

84.     The letters and post-judgment-remedy documents are then created directly from this electronically stored information.

85.     On information and belief, no attorney meaningfully reviews or authorizes any particular individual letter or post-judgment-remedy document before it is sent.

86.     Rather, the only attorney involvement is to review the form of the letter, restraining notice or income execution, and to define some general parameters as to the intended recipients.

87.     Based upon the boilerplate forms attached to this Complaint and the dismal and unconscionable failure of F&G to go online to look at the state-court case docket when it received Ms. Brown's account from Asset Acceptance, it is clear that no attorney had personally reviewed the particular circumstances of the alleged collection account (1) before sending the letters attached to this Complaint, or (2) before freezing up – and leaving frozen to the present – Ms. Brown's safe deposit box.

88.     The letters and restraining notice attached to this Complaint deceptively purports to be "from an attorney" when in fact the documents are not from an attorney in any meaningful sense.

89.     No attorney reviews the file or determines the legal validity of judgments or underlying debts before the letters or restraining notices or income executions – in the forms attached to this Complaint – are sent.

90.     F&G is a collection agency masquerading as a law firm, which uses clerical workers, not attorneys, and false allegations contained in form letters and legal documents, to collect debts using the power and leverage of a law license.

91.     As a result of Defendants' acts, Ms. Brown has had to spend time and money communicating with Defendants.

92.     As a result of Defendants' acts, Ms. Brown has also been wrongfully deprived of her property.

93.     As a result of Defendants' acts, Ms. Brown has become nervous, upset, anxious, suffered a great deal of embarrassment at having her safe deposit box frozen, and suffered from emotional distress.

## COUNT I
### Violations of Sections 1692d, e, f, and g of the Fair Debt Collection Practices Act

94.     Plaintiff hereby restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

95.     Defendants violated 15 U.S.C. § 1692c(b) by communicating with Ms. Brown's bank to effectuate a postjudgment judicial remedy when there was no judgment and there was no debt.

96.     Defendants violated 15 U.S.C. § 1692e(8) by communicating the false information that there was a judgment against Ms. Brown and that she owed a debt to Defendants.

97.     Defendants violated 15 U.S.C. § 1692d, by engaging in harassing, oppressive and abusive behavior in pursuing Ms. Brown – and freezing up her safe deposit box – for a judgment that had been vacated on a matter that had been dismissed with prejudice.

98.     Defendants violated 15 U.S.C. § 1692g of the FDCPA, by failing to

14

provide the name of the current creditor. "ASSET ACCEPTANCE, LLC AAO PACIFIC BELL, TELE/SCA-LLA" is not the name of any entity.  Moreover, the designation set forth by Defendants, and the use of the abbreviation "AAO", is confusing and deceptive to the least sophisticated consumer, who could be mislead both as to the name of the current creditor and as to the name of the original creditor.  Thus, this is also a false and deceptive act under 15 U.S.C. §§ 1692e and e(10), and an unfair and unconscionable act under 15 U.S.C. § 1692f.

99.    Defendants violated 15 U.S.C. § 1692e(11) and 1692g of the FDCPA, by failing to give any of the warnings and notices required to be given in the initial written communication to the consumer.

100.    Defendants violated 15 U.S.C. § 1692e, e(2), e(4), e(5), e(10), f, f(1), and f(6) by falsely, deceptively, misleadingly, unfairly and unconscionably representing that there was a judgment against Ms. Brown and a debt owed by Ms. Brown and not only pursuing her, but freezing her safe deposit box and refusing to unfreeze it even when put on actual notice that neither the claimed judgment nor the claimed debt existed.

101.    Defendants violated 15 U.S.C. § 1692e, e(2), e(4), e(5), e(10), f, f(1), and f(6) by falsely, deceptively, misleadingly, unfairly and unconscionably misrepresenting in letters and in restraining notices that F&G had the legal capacity to collect on the non-existent judgment, even though it had never served a substitution of attorney on Ms. Brown and had never filed a substitution of attorney with the Bronx Civil Court.

15

102.    In other words, because it was not attorney of record, F&G never had the right to attempt to collect on the non-existent judgment and certainly never had the right to misrepresent to Ms. Brown and to Bank of America that it had the right to restrain Ms. Brown's assets for the purported judgment creditor, Asset Acceptance.

103.    Defendants violated 15 U.S.C. § 1692e, e(3), and e(10) by failing to conduct any meaningful attorney review, when even the most rudimentary review of the publicly available website for the New York City Civil Court would have revealed that the judgment Defendants were attempting to collect had been vacated and the case had been dismissed.

104.    Defendants' violations of 15 U.S.C. §1692, *et seq.*, render it liable to Plaintiff.

**WHEREFORE**, Plaintiff Lashawn Brown respectfully request that judgment be entered against the Defendant for:

(a)  Actual damages;

(b)  Statutory damages for pursuant to 15 U.S.C. § 1692k;

(c)  Declaratory relief;

(d)  Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

(e)  For such other and further relief as may be just and proper.

## COUNT II
### Violations of New York General Business Law § 349

16

105.    Plaintiff hereby restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

106.    New York G.B.L. § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state . . . ."

107.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." N.Y. G.B.L. § 349(h).

108.    Defendants violated N.Y. G.B.L. § 349 by attempting to collect on a judgment that had been vacated and an action on a debt that had been dismissed with prejudice.

109.    Defendants also violated N.Y. G.B.L. § 349 by falsely, deceptively, and misleadingly representing to Ms. Brown and to Bank of America that it had the right to take any legal or collection actions and to freeze Ms. Brown's safe deposit box.

110.    Defendants also violated N.Y. G.B.L. § 349 by falsely, deceptively, and misleadingly representing to Ms. Brown that the burden was on her to prove that the vacated judgment and dismissed action Defendants were collecting on didn't

17

exist when, in fact, it was Defendants burden not to proceed with collection actions and post-judgment remedies on a judgment and a debt that no longer existed and that Ms. Brown steadfastly maintained was the result of identity theft.

111.    Defendants also violated N.Y. G.B.L. § 349 by falsely, deceptively, and misleadingly refusing to release Ms. Brown's safe deposit box despite having been provided with incontestable evidence that the judgment had been vacated and the underlying action had been dismissed with prejudice.

112.    Defendants also violated N.Y. G.B.L. § 349 because they knew or should have known, had F&G performed any meaningful attorney review, that the public records on the New York Unified Court System website showed that the judgment had been vacated and the underlying matter dismissed and, therefore, that any attempt to collect on the non-existent judgment and debt would be false, deceptive, and misleading.

113.    Defendants also violated N.Y. G.B.L. § 349 by failing to serve a substitution of counsel on Ms. Brown and by failing to file a substitution of counsel with the Bronx Civil Court, and then by misrepresenting to Ms. Brown and to Bank of America that it had the right, as attorney of record, to attempt to collect on the non-existent judgment and to freeze Ms. Brown's assets.

114.    Defendants' deceptive acts and practices have broadly impacted consumers at large, in that Defendants have engaged in a pattern of attempting to collect on judgments assigned *en masse* to F&G by Asset Acceptance for collection with no prior review by Asset Acceptance, no meaningful attorney review by F&G,

18

and no substitution as attorney of record by F&G.

115.   Because Defendants knew or should have known – based on records readily available to the public on the Internet and based on Ms. Brown's oral and written disputes – that they were attempting to collect on a judgment that had been vacated and an underlying lawsuit that had been dismissed with prejudice, Defendant's deceptive acts were willful and knowing.

116.   Because Defendants persist to this day in wrongfully freezing Ms. Brown's safe deposit box, , Defendant's deceptive acts were willful and knowing.

117.   Defendant's deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury. Actual damages include, without limitation, the costs of mailing dispute letters, the time wasted in disputing a debt that no longer existed, the public embarrassment and humiliation of having a false judgment reported to Bank of America and having her safe deposit box frozen, loss of use of her safe deposit box, the costs of meeting with and retaining a private attorney for legal advice, lost wages, and emotional distress.

118.   As a direct and proximate result of Defendant's deceptive acts and practices, committed in violation of N.Y. G.B.L. § 349, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, to the recovery of actual and treble damages, costs and attorney fees.

WHEREFORE, Plaintiff respectfully asks that this Court:

(a)     Enter judgment for the Plaintiff on her cause of action;

(b)     Enter an injunction prohibiting Defendants from attempting to collect on the vacated judgment or underlying debt which has already been dismissed with prejudice;

(c)     Enter an injunction directing Defendants to immediately release her safe deposit box;

(d)     Award actual damages;

(e)     Award treble damages under G.B.L. § 349(h);

(f)     Award statutory damages under 15 U.S.C. § 1692k;

(g)     Award attorney fees and costs to the Plaintiff under 15 U.S.C. § 1692k and G.B.L. § 349(h); and

(h)     Award such other and further relief as may be just, proper and equitable.

### COUNT III
### Trespass to Chattels

119.    The essential elements of trespass to chattels are (1) intent, (2) physical interference with (3) possession (4) resulting in harm.

120.    Here, Defendants showed intent in that they failed to conduct any review before freezing Ms. Brown's safe deposit box – even failing to review the record of the case available to the public on the Internet – and to this day, Defendants have ignored all disputes and evidence presented by Ms. Brown showing that the judgment was vacated and the underlying case dismissed with prejudice.

20

121.   As a result, Ms. Brown has been unable to gain access to her own safe deposit box and its contents since approximately October 2014, thereby interfering with her possession and use of her own chattels.

122.   As a result, Ms. Brown has suffered the loss of use and possession of her chattels for a substantial time, for which she deserves to be compensated, in addition to the all of the actual damages set forth in the preceding paragraphs and sections of this Complaint.

WHEREFORE, Plaintiff respectfully asks that this Court:

(a)   Enter judgment for the Plaintiff on her cause of action;

(b)   Enter an injunction directing Defendants to immediately release her safe deposit box;

(c)   Award actual damages;

(d)   Award punitive damages;

(e)   Award attorney fees and costs to the Plaintiff; and

(f)   Award such other and further relief as may be just, proper and equitable.

## COUNT IV
### Conversion

123.   In order to establish a cause of action for conversion, a plaintiff must establish legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights.

21

124.   Intent to possess another's property is not an essential element of conversion.

125.   It is not even necessary that a converter take physical possession of the property; any wrongful exercise of dominion by one other than the owner is a conversion.

126.   Here, Defendants, without any remotely colorable right – without even an underlying debt, much less an underlying judgment – have frozen Ms. Brown's safe deposit box.

127.   As a result, Ms. Brown has been unable to gain access to her own safe deposit box and its contents since approximately October 2014, thereby interfering with her possession and use of her own chattels.

128.   Instead, Defendants have falsely and fraudulently exercised dominion over her safe deposit box and its contents.

129.   As a result, Ms. Brown has suffered the loss of use and possession of her chattels for a substantial time, for which she deserves to be compensated, in addition to the all of the actual damages set forth in the preceding paragraphs and sections of this Complaint.

WHEREFORE, Plaintiff respectfully asks that this Court:

(a)   Enter judgment for the Plaintiff on her cause of action;

(b)   Enter an injunction directing Defendants to immediately release her safe deposit box;

(c)   Award actual damages;

(d)     Award punitive damages;

(e)     Award attorney fees and costs to the Plaintiff; and

(f)     Award such other and further relief as may be just, proper and

equitable.

### Demand for Jury Trial

130.    Plaintiff demands a trial by Jury.

Dated:     New York, New York
           August 26, 2015


                              Respectfully Submitted,


                              By: _____
                                  Brian L. Bromberg
                                  One of Plaintiff's Attorneys


**Attorneys for Plaintiff**
Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906

Matthew A. Schedler
CAMBA Legal Services, Consumer Law Project
885 Flatbush Ave, 2nd Floor
Brooklyn, NY 11226
(718) 940-6311